Good morning, Your Honors, and may it please the Court. My name is Adam Smedstad on behalf of the California Trucking Association Appellant. With permission, I would like to reserve five minutes of time for rebuttal. Yes, certainly. But try to keep track of your own time. Thank you, Your Honor. I'm not sure why this case got 15 minutes. It seems fairly straightforward. Well, I would agree. I'm sure both sides think that. I'm quite certain. In 2016, the Supreme Court explained that where a statute contains an express preemption provision, as the F4A does here, there is no presumption against preemption. And that is Puerto Rico v. Franklin, California Tax-Free Trust, 136 S. Court, 1938. Rather, when there is an express preemption provision, the Court must look to the language of that preemption provision itself. And Congress, in this instance, could not have been more clear on this score. Preemption is, by the statute's own terms, the F4A's general rule. That's what it says. And the Supreme Court has held that the F4A preempts any state law claim that has a connection with or reference to a motor carrier's services with respect to the transportation of property. The Labor Commissioner acknowledges at pages 13 and 14 of her brief that her application of the Borrello factors to the arrangements between motor carriers and owner-operators is littered with references to and connections with motor carrier services. In applying those factors, the Labor Commissioner examines how much control the motor carrier exerts over the independent contractor of transporting property. She examines whether the motor carrier is in a distinct business from the independent contractor. She examines whether the motor carrier monitors the independent contractor while he is transporting the property. She examines who – either the IC or the motor carrier – supplies the truck and the other equipment necessary to transport the property. She examines how the motor carrier pays the independent contractor for transporting the property. She examines whether the independent contractor's transportation of property requires a special skill. It is the Labor Commissioner's assessment of these facts, each of which has a direct reference to and connection with the motor carrier's services, that allows the Labor Commissioner to use California's policy judgment, as embodied in the Borrello test, to disrupt the terms under which the parties have agreed to transport property. The Labor Commissioner attempts to avoid the import of her concession regarding her assessment of the operations of motor carriers by claiming that Congress only intended to preempt state law claims between motor carriers and consumers. This Court recognized in ATA v. LA Ports that the F4A contains no such limitation. This Court had no difficulty in determining that the Ports' insistence that motor carriers use employees instead of independent contractors was a, quote, palpable interference with prices and services. And that's at 559 F3rd 1056. That holding from the Ninth Circuit is precisely why the Supreme Court has explained that the F4A's preemption prohibition is most sensibly read as prohibiting a state from imposing its own public policy or theories of competition on the operations of a motor carrier. The Supreme Court has also made it clear that the F4A will not, quote, countenance the separation of matters essential from matters unessential to a carrier's operations. In other words, the Supreme Court has made it clear that a state may not interfere with a motor carrier's operations with respect to the transportation of property, period. As the Supreme Court in Northwest v. Ginsburg held, once the connection is made between the claims, not the law, but the claims, and a motor carrier's services with respect to the transportation of property, the F4A's general rule of preemption applies. And to drive this point home, the Supreme Court never once considered whether allowing Rabbi Ginsburg back into Northwest's frequent fire program would have had a significant impact on its services or prices. The Supreme Court had no difficulty in finding that Rabbi Ginsburg's individual claim was preempted. The difference that I think has been pointed out by our court generally is that Rabbi Ginsburg and the airline, that was a customer relationship which is not a traditional state function to govern. And that what generally is a traditional state function is not covered by the preemption. I think we've said that generally the kinds of things that are reserved to the state are not preempted. And that the difference, the regulation of the relationship employed in an independent contractor is a matter that is subject of General's California regulation. So two points on that, Your Honor. First of all, the F4A has a list of enumerated exceptions to the general rule. And there is no police powers or workforce exception to the general rule of preemption. Roe teaches that the list of the exceptions in the F4A is not subject to judicial expansion. And to address your initial point directly, Your Honor, this court has determined in the motor carrier context that the F4A does preempt state interference with a motor carrier's decision regarding whether to use an independent contractor or an employee driver. In the ATA v. Port, the L.A. Ports case, there was no issue of a consumer claim at all. And there was no question but that the L.A. Ports concession agreement was requiring the use of employees, which according, as Your Honor pointed out, would have been traditionally within a police powers arena. But there is no exception to the F4A preemption for police powers or workforce. And actually, the case in ours garage drives this point home with particularity. That entire case centered around whether one of the actually enumerated exceptions to preemption could be read to include actions by municipalities, even though the exception only mentioned states. There was no question about whether the regulation at issue fell within the municipality's police powers. Had there been a police powers exception, the case would have been resolved in a two-sentence per curiam. This falls within traditionally regulated police powers of the state. It is not preempted by the F4A. Your Honor, I don't understand just police powers. What do you make of DILTS, and doesn't that say that the meal and rest break laws are not preempted because they're generally applicable laws of the state in a traditional area? Well, there's two things about DILTS. Number one, DILTS was a case in which there were admittedly employee drivers. And it was a question of whether or not the application of California's background laws to those employee drivers had a connection with or reference to motor carrier services. What's important, and leaving aside whether or not DILTS was directly or correctly decided, this Court has recently affirmed, and this is in 2017 in the Hickox-Huffman case, the importance to Congress's deregulatory goals of enforcing the contracts that are freely made in the marketplace. And this Court held that if we don't enforce those contracts that are freely made, then the market forces that Congress sought to have work cannot operate. And in DILTS, there was no evidence of an agreement between the employees and the employer. Do you think in DILTS, if the contract had said, here are the meals and breaks that you can have, and that conflicted with the California statute, that you would have won DILTS? I think if there had been an agreement between the employees and the motor carrier to forego or have different timing of the meal and rest periods, by reason of the need, its impact on the motor carrier's ability to perform its services, yes, I think the result would have been different. Do you think you could override the traditional California labor requirement that there be meals and breaks, and you could say, by contract, we override the California statute, and you get no meals, no breaks? Assuming that you had a reasonable policy and didn't say no meals, no breaks. But you had a different policy by contract than is the traditional state rule that's generally applicable. If there was a demonstration that the reason for doing so was an impact on the services that were being provided, yes. And, Your Honor, and I realize that I'm drifting into my rebuttal time, but inherent in the issue of deregulation is the premise that the free market will operate when states don't interfere. It will operate efficiently. And this is not a country in which we have indentured servitude. No one can be forced to do a job they do not want to do. And people leave their jobs all the time. But this sounds like a lot of work. I mean, the states have adopted statutes protecting labor rights and individual workers' rights, which are a general applicability. And to say, well, you can contract away all those rights because this is the kind of country where contract prevails, I think that's a pretty old argument. Two points on that, Your Honor. Number one, this raises the issue of the district court's failure to draw inferences in our favor because, as we expressly alleged in the complaint, some of our members use employee drivers when it's efficient to do so and others use owner-operators when it's efficient to do so. There's no request by the CTA or any of its members to be relieved of their obligations under the Labor Code. Rather, and indeed, if a CTA motor carrier member was to use the label just as a way of foisting its obligations as an employer onto its employee, nothing in the F4A would prevent that employee from getting out from underneath that contract by saying this is not the agreement that I agreed to, this is not the bargain that I struck. And with that, Your Honor, I'm going to reserve my last three minutes. We'll give you five minutes. Thank you, Your Honor. Roberts. May it please the Court. Miles Locker, attorney for the Labor Commissioner, representing the Defendant Apolli Julie Sue, State Labor Commissioner. This is a very straightforward case and it's founded upon a case that was decided by this circuit 20 years ago now, the Mendonca case, which was the, I think, the first F4A decision where the Court looked at whether or not a State law, employment law, wage and hour law of general applicability was preempted or not by the F4A. This was in the context of public works, prevailing wage law, where, you know, you had a challenge to that. The Employer Association said that this was somehow preempted by the F4A, and this Court said, no, there's no preemption. It's a background statute that's enacted pursuant to the State's powers to, you know, regulate wage and hour law. And there's no intent by Congress to preempt that. And this was built upon by the, you know, the Court built on that structure in the Dilts decision where the Court concluded that the State's meal and rest period provision requirements are not preempted by the F4A. And the problem here is, quite frankly, if what the California Trucking Association says here is correct, then these decisions, Mendonca and Dilts, are meaningless, because then every single motor carrier would simply have its driver sign an agreement that says, I'm an independent contractor. And each driver, driven by the need to find work, would sign that agreement. And that's that. Then there would be no protection. If, in fact, the underlying protection, the underlying substantive protection, is not preempted by the F4A, certainly the issue as to whether or not the person performing the service as the driver here is an employee entitled to that protection or is, in fact, an independent contractor, that has to be part of what is not preempted. The State here, and this is a very important distinction, very important. I agree. In the ATA v. City of Los Angeles case, that was not a consumer case. That was a case where the Port of Los Angeles had the so-called concession agreement under which, under the terms of this provision that the Port wanted to impose on motor carriers in the Port, they wanted to phase out the use of independent contractors. They put this thing in to prevent motor carriers from using independent contractors that, within a certain number of years, all of the drivers would have to be employees. And the Court there said, no, that is preempted. That, you know, the motor carrier still has to have the right to be able to use independent carriers and independent contractors. And here we're not saying they don't have a right to use independent contractors. We're saying that when they classify someone as an independent contractor and they tell us in a wage adjudication hearing why this person is not entitled to the minimum wage because he's an independent contractor, we have the right as a State agency to apply State common law, to apply the Borrello test to determine whether or not, in fact, this person truly is an independent contractor or not. If, indeed, under this test the person is an independent contractor, good luck to them. That's wonderful. Congratulations. State wage and hour law doesn't apply to them. But if this is a subterfuge, if in the specific, you know, wage and hour case that we're looking at, adjudicating, prosecuting, what have you, if it turns out that the person is not an independent contractor under the multi-factor Borrello test, I think I wrote down 14 factors. I think it's more like 16 factors, a lot of factors. And what's important, and I really want to say that this decision the Court made here in ATA v. City of Los Angeles, it's very similar, actually, it's right on point, with what the First Circuit decided in the two cases that I think they spoke about in their papers, Coakley and Schwann, where the First Circuit Court of Appeal, they said under a different test than Borrello, under the so-called 123 or ABC test, where under one of those prongs, under the B prong, it essentially precluded motor carriers from being able to use independent contractors, because it said that every one of these factors had to be satisfied, and if not, the person was not an independent contractor, was an employee. One of these factors was that the person providing the service had to be providing it in, outside the usual course of business of the principal. So that, the Court said, the First Circuit said, uh-uh, that's no good, because that would prevent the use of independent contractors. So they said that's preempted, but the other two prongs are fine, they're not preempted. Now the bottom line is that your argument is that nothing about the Borrello factors, the application of the Borrello factors by their terms compelled the use of employees or independent contractors in any way, nor do the application of the Borrello factors seem to, in any significant way, directly impact rates, routes, or services. Under our precedents of DILT and MDOCA, not preempted. Verrilli, Your Honor, that's it, exactly. I mean, the most important factor in Borrello, and the Supreme Court, the California Supreme Court, is the, whether the principal has the right to exercise control over the manner and means by which the job is done. That's the traditional common law test. Then the second important factor they talked about was the ability to, the right to terminate without cause, and then they list a whole bunch of factors, and they also go and list factors under the Federal Economic Realities Test. It's true. One of the factors that's listed in this whole list of factors is whether or not the person performing the service is, whether the service is in the same business as that of the principal. That's true. But it is not a determinative factor. That's the gigantic difference between the Borrello test and what was in front of the court in the First Circuit in Massachusetts. Here, it's a non-determinative, it's one of 14 or 16 factors. It's not the most important, and the California Supreme Court in Borrello says you have to look at all these factors and, you know, apply them and give them whatever weight, and such, that it's a complicated test. And it's just, it's so different from this court's ATA decision where you had an ordinance, whatever it was, with, you can't use independent contracts. I think you're beginning to go over your argument again. I think you've made your argument. Thank you. Pretty straightforward. Very straightforward. Yes. Thank you. Thank you, Your Honor. Thank you. Well, we're going to give the counsel four minutes, please. Thank you, Your Honors. Your Honor, first let's address the issue of whether or not a motor carrier's use of employees or independent contractors falls within the F4A's preemptive ambit. Either the F4A has a workforce exception, or it does not. I can represent, there is none enumerated. Let's assume you do have a right to use independent contractors or employees. That's your decision. The issue is, does California have the right, generally, throughout the labor force, to have a definition for what is an independent contractor and what is an employee? And the answer to that, reconciling this court's opinion in ATA versus LA Ports, which said that interfering with that decision is a rather palpable interference with services. That was the direct connection that this court made.  And the Supreme Court in Wolins, and this is in footnote five, said, in answer to your first question, the answer is no. California may not use its own public policy to impose its opinions on the operations of a motor carrier. And what it said is, the F4A's preemption prohibition is most sensibly read as a competition on the operations of a motor carrier. And that's just what the labor commissioner told you she's doing. The labor commissioner said, I don't care what you do. You just have to classify them in accordance with California law. In other words, you have to run your operations in accordance with what we have decided as a public policy is appropriate for how to treat an independent contractor versus an employee. And the Supreme Court has said, you cannot do that. And this court has said that it's unquestionable that interfering in that decision and interfering in that operation has a palpable effect on services. There is nothing in the Supreme Court's precedent that turns preemption on the issue of whether or not the claimant can succeed. Importantly, in Ginsburg, Ginsburg was an appeal from a dismissal, not after trial. It had been dismissed on a motion to dismiss. And the Supreme Court never once considered whether Rabbi Ginsburg was assured of winning, never once considered whether or not if Rabbi Ginsburg had won, it would have any impact on Northwest services or prices. It simply said that the preemption determination turns on whether Rabbi Ginsburg's allegations, whether Rabbi Ginsburg's claims have a reference to or connection with the services. There's no question but that what the Labor Commissioner is doing is precisely that. It is examining and imposing California's public policy on the operations of CTA members to determine whether or not the contracts that were freely entered into between CTA members and owner-operators should be enforced. And to be clear, this is all being done after the fact. And California law is clear that when you determine that a contract is void, you've got two choices. You can rescind the contract and go back to where you were in the beginning, or you can ratify the contract and sue under it. But no California case holds that you may rewrite the contract on terms that the parties never agreed to. And certainly, the FRA would prohibit the Labor Commissioner from doing so. Thank you, Your Honors. Thank you both very much. The case is, I argue, will be submitted.
judges: Reinhardt, Tashima, Nguyen